UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
HINDY TAUB,                                )
individually and on behalf of              )
all others similarly situated,             )
                                           )
                    Plaintiff,             )
                                           )
        - against -                        )         CLASS ACTION
                                           )
DEPARTMENT STORES                          )         JURY DEMANDED
NATIONAL BANK,                             )
                                           )
                    Defendant.             )
------------------------------------------------------x



**COMPLAINT**

1. This action seeks redress for the illegal practices of Defendant Department Stores National Bank (the "Bank"), for sending periodic billing statements to its customers that violated the Truth in Lending Act ("TILA").

2. TILA's purpose is to assure meaningful disclosure of credit terms in order to (i) allow consumers to compare more readily the various credit terms available; (ii) enable consumers to avoid the uninformed use of credit; and (iii) protect consumers against inaccurate and unfair billing practices. 15 U.S.C. § 1601(a). As alleged in greater detail below, the Bank failed to make certain disclosures on periodic statements it sent to customers. The Bank's conduct violates the express provisions of the TILA and the applicable Regulations.

3. Under the private enforcement provisions of TILA, plaintiff and the Class seek the recovery of statutory damages of up to $500,000 with respect to each of the Bank's failures to comply.

### *Jurisdiction and Venue*

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337, as well as under 15 U.S.C. § 1640(e), because this action arises under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*.

5. Venue is proper because the acts and transactions that give rise to this action occurred, in substantial part, in this District. Venue is also proper in this district because the Bank transacts business in this district and the interests of justice require maintenance of this action in this district.

### *Parties*

6. Plaintiff Hindy Taub resides New York, New York, which is within this district.

7. Taub is a "consumer," as that term is defined by § 1602(h) of TILA, because this complaint arises from the Bank's offer and extension of credit to Taub, a credit card holder, for personal, family or household purposes.

8. Upon information and belief, the Bank is a corporation doing business in the State of New York and throughout the United States, with a principal place of business in Sioux Falls, South Dakota.

9. The Bank is a "creditor," as that term is defined by § 1602(f) of TILA and Federal Reserve Board Regulation Z ("Regulation Z"), 12 C.F.R. § 226.2(a)(17), because

at all relevant times, the Bank, in the ordinary course of its business, regularly – *i.e.*, more than 25 times a year – extended or offered to extend consumer credit for which a finance charge is or may be imposed, which is payable in more than 4 installments.

## *Factual Allegations*

10. Taub is the holder of a Macy's store card account issued by the Bank in 2007.

11. Taub received a billing statement in May of 2007 with a closing date of May 30, 2007, a photocopy of which is redacted and attached as Exhibit A; and she received an initial disclosure statement in June of 2007, a photocopy of which is attached as Exhibit B.

12. All class members herein, as defined below, hold or held a Macy's store card account originally or presently issued by the Bank.

## *Class Allegations*

13. Taub brings this action individually and on behalf of all persons similarly situated.

14. The proposed class consists of all persons who, within one year before the filing of this action, according to the Bank's records, received an initial disclosure statement for a newly opened Macy's store card account with certain terms coded and not properly described as mandated by Regulation Z; or who received periodic statements that either (i) did not disclose, as prescribed by TILA and Regulation Z, the effective annual periodic rate ("APR") applicable to the balance on their Macy's store accounts or (ii) included advertising or promotional material interspersed with mandatory disclosures, also in violation of Regulation Z and TILA.

15. Specifically excluded from this class are the Bank, any entity in which the Bank has a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries or assigns of any such individual or entity.

16. The members of the class for whose benefit this action is brought is so numerous that joinder of all Class members is not practicable. In light of the tens of thousands of credit cards issued by The Bank every year, the number of class members is believed to be in excess of 100,000 persons.

17. Taub's claims are typical of, if not identical to, all members of the class and Taub does not have any interest that is adverse or antagonistic to the interests of the class. If the conduct of the Bank violates TILA as applied to Taub, then it violates TILA with respect to the entire class.

18. Taub will fairly and adequately protect the interests of the class as she is committed to the vigorous prosecution of this action and, to that end, has retained competent counsel experienced in complex litigation of this nature.

19. The class is proper for certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure. The Defendant's actions complained of herein are generally applicable to all Class members, thereby making final injunctive relief appropriate with respect to the class as a whole.

20. The class is also proper for certification under Federal Rule of Civil Procedure 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein. Because damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impracticable for the class to seek redress individually for the wrongs

they have suffered. Members of the class do not have a particular interest in individually controlling the prosecution of separate actions.

21. There are questions of law and fact which are common to the members of the class and which predominate over questions affecting only individual members. Common questions of law and fact include, but are not limited to, whether the Bank has a standardized procedure by which it fails to clearly and conspicuously disclose the effective APR on balances for the billing period as required by TILA and Regulation Z.

22. Upon information and belief, the Class consists of thousands of customers.

23. Thus, a class action is an appropriate and superior method for the fair and efficient adjudication of the present controversy given the following factors:

   a) Common questions of law and/or fact predominate over any individual questions which may arise and, accordingly, there would accrue enormous savings to both the Court and the Class in litigating the common issues on a class-wide instead of a repetitive individual basis; and

   b) The aggregate volume of the individual class members' claims, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation.

24. Class certification is also fair and efficient because prosecution of separate actions by individual Class members would create a risk of differing adjudications with respect to such individual members of the Class, which as a practical matter may be dispositive of the interests of other members not parties to the adjudication, or substantially impede their ability to protect their interests. Moreover, since the actual monetary damages suffered by, or statutory damages available to, individual Class members may be relatively small, although significant in the aggregate, the expenses and burdens of individual litigation make it impossible or effectively impossible for the

members of the Class to seek individual redress for the TILA violations committed by Defendants.

25. Plaintiff anticipates that there will be no difficulty in the management of this litigation. The records of the individuals encompassed within the Class are in Defendant's possession.

## COUNT I

### Violations of the Truth in Lending Act

26. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

27. Congress authorized the Federal Reserve Board ("FRB") to promulgate regulations granting it broad authority to effectuate the purposes of TILA. 15 U.S.C. § 1604(a).

28. The set of regulations that the FRB has promulgated to implement TILA is known as Regulation Z. 12 C.F.R. §226.1 *et seq*.

29. TILA requires a creditor to send a periodic statement to a customer who has an outstanding balance at the end of the billing cycle. 15 U.S.C. § 1637(b).

30. TILA requires this statement to disclose "[w]here one or more periodic rates may be used to compute the finance charge, each such rate, the range of balances to which it is applicable, and … the corresponding nominal annual percentage rate." 15 U.S.C. § 1637(b)(5).

31. Regulation Z similarly requires creditors to disclose on the periodic statement "each periodic rate that may be used to compute the finance charge, the range

of balances to which it is applicable, and the corresponding annual percentage rate." 12 C.F.R. § 226.7(d).

32.     TILA additionally requires the periodic statement to disclose "the total finance charge expressed as an annual percentage rate." 15 U.S.C. § 1637(b)(6).

33.     Regulation Z similarly requires the statement to disclose the "actual" or "effective" annual percentage rate – that is, the historical rate – for the billing period. 12 C.F.R. §§ 226.7(g), 226.14(c).

34.     Thus, TILA and Regulation Z, as a general rule, require the creditor to disclose both the corresponding annual percentage rate and the actual annual percentage rate on the periodic statement; however, when the corresponding annual percentage rate is the same as the actual annual percentage rate required to be disclosed, the Staff Commentary to Regulation Z provides that the creditor need disclose only one annual percentage rate, but in doing so it "must use the phrase 'annual percentage rate.'" 12 C.F.R. §226 Supp. I, Comment 7(d)-5.

35.     Regulation Z requires that periodic statement and initial agreement disclosures be made "clearly and conspicuously." 12 C.F.R. § 226.5(a)(1).

36.     The Staff Commentary to Regulation Z mandates that when using codes or symbols such as 'APR' (for annual percentage rate) on a disclosure document, the creditor must also provide a legend or description within that document to meet this "clearly and conspicuously" requirement. 12 C.F.R. §226 Supp. I, Comment 5(a)(1)-1.

37.     The Staff Commentary to Regulation Z mandates that to meet the "clearly and conspicuously" requirement, disclosure documents of more than one page or side of a page must form an "integrated document," and that documents containing mandatory

disclosures interspersed with promotional material do not constitute an "integrated document." 12 C.F.R. §226 Supp. I, Comment 5(a)(1)-2.

38. On or about May 30, 2007, Plaintiff opened a Macy's store credit account, issued by the Bank.

39. On or about May 31, 2007, the Bank mailed Plaintiff a periodic statement covering the period through May 30, 2007 (the "May 2007 Statement").

40. The May 2007 statement disclosed, *inter alia*, that for the balance during this billing period (i) the daily periodic rate was "0.06274%" and (ii) the "CORRESPONDING ANNUAL PERCENTAGE RATE" was 22.90%.

41. The May 2007 statement failed to comply with TILA and Regulation Z because the creditor only disclosed the "CORRESPONDING ANNUAL PERCENTAGE RATE" and did not disclose any rate using the required term "ANNUAL PERCENTAGE RATE."

42. The May 2007 statement, which included certain mandatory periodic statement disclosures on its front and reverse sides, also contained promotional material on its front side for "Macy's Gift Wrap" and for a USA Today newspaper subscription.

43. Thus, the May 2007 statement also failed to comply with Regulation Z because such interspersing of promotional material and mandatory disclosures amounted to a violation of the requirement to make disclosures "clearly and conspicuously."

44. On or about June 1, 2007, the Bank e-mailed Plaintiff a credit card agreement ("Agreement"), or the initial disclosure statement, for the subject account.

45. The Agreement employed the code or symbol "APR" in several places without providing a legend or a description of this code or symbol as meaning "annual percentage rate."

46. The Agreement failed to comply with TILA and Regulation Z because using "APR" as a code or symbol for "annual percentage rate" without a legend or description on the disclosure document is an explicit violation of the requirement to make disclosures "clearly and conspicuously."

47. With respect to each of the Bank's violations of TILA, as alleged above, Plaintiff and the Class are entitled to recover up to $500,000 in statutory damages, together with costs and reasonable attorney fees.

**WHEREFORE**, Plaintiff Hindy Taub prays on her behalf and on behalf of the Class that judgment be entered against Defendant as follows:

(1) An order certifying the proposed Class under Federal Rule of Civil Procedure 23(b)(2) and, additionally or in the alternative, an order certifying the Class under Federal Rule of Civil Procedure 23(b)(3);

(2) A declaration that the Bank's systematic and standard policy of furnishing certain noncompliant periodic statements for Macy's store card accounts that (i) omit the appropriate annual percentage rate disclosure and (ii) contain promotional material interspersed with mandatory disclosures violates the Truth in Lending Act;

(3) A declaration that the Bank's systematic and standard policy of furnishing agreements for Macy's store card accounts that employ the code "APR" without providing a legend or description for that code elsewhere within the agreement violates the Truth in Lending Act;

 (4) An injunction permanently prohibiting the Bank from engaging in the conduct described;

 (5) Maximum statutory damages as provided under 15 U.S.C. § 1640(a)(2);

 (6) Attorney fees, litigation expenses, and costs; and

 (7) Such other and further relief as to this Court may seem just and proper.

### Jury Demand

Plaintiff respectfully requests a trial by jury.

Dated: New York, New York
   June 2, 2008

                Respectfully Submitted,

           By: _/s/ Brian L. Bromberg_
               Brian L. Bromberg
               One of Plaintiff's Attorneys

<u>Attorneys for Plaintiff</u>

Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
(212) 248-7906

Harley J. Schnall
Law Office of Harley J. Schnall
711 West End Avenue
New York, NY 10025
(212) 678-6546

# Exhibit A




# Red Star Rewards account statement

For the period ending May 30, 2007
Days in billing cycle: 25

**Hindy H Taub**
Account number: ███████████
Questions? Call 866-593-2543
Page: 1 of 1

## Account summary

| | Revolving |
|---|---|
| Balance of last statement | 0.00 |
| Payments | − 0.00 |
| New transactions this statement | + 61.09 |
| FINANCE CHARGES | + 0.00 |
| **New balance** | **61.09** |
| Minimum payment due on Jun 30, 2007 | $5.00 |

REMINDER: YOUR MINIMUM PAYMENT DUE MUST BE RECEIVED BY THE PAYMENT DUE DATE TO AVOID BEING CHARGED A LATE PAYMENT FEE. PAYMENTS RECEIVED AFTER THE PAYMENT DUE DATE WILL APPEAR ON THE FOLLOWING MONTH'S STATEMENT.

A FINANCE CHARGE in the amount of $1.00 will be added to your Revolving account balance if you choose to pay less than the full balance by your due date.

## Revolving account transaction details

| Date | Store | Description | Amount |
|---|---|---|---|
| May 30 | Herald Square | Mens Underwear − C. Klein Basic Underwr | 40.00 |
| | | Mens Hosiery − Totes/Dearfoam | 16.87 |
| | | Mens Hosiery − Calvin Klein Athletic | 15.00 |
| | | Receipt total | 71.87 |
| May 30 | Herald Square | New Account Savings | − 10.78 |

Visit www.macys.com to view previous transactions and statements.

## Financial terms

| | |
|---|---|
| Average daily balance | $2.44 |
| Daily periodic rate | 0.06274% |
| CORRESPONDING ANNUAL PERCENTAGE RATE | 22.90% |
| Balance method | B |

## Star news

Wrap it up..perfectly! Remember, presentation is everything, so once you've found the perfect gift for everyone on your list, let the experts at Macy's Gift Wrap give it the star treatment. No matter how big or small your gift is, we wrap it in style! We have a dazzling selection of gift wrap designs, patterns and styles to choose from, ribbons, bows, and more! Gift Wrap not available @ all Macy's.

Thank you for opening a new account and joining Star Rewards. Your new account savings is $10.78.

**START YOUR DAY WITH USA TODAY!**
Start your day off right with home or office delivery of USA TODAY for 13 weeks for $45.50. Call 1-800-872-0001 and mention promo 170 or go online to www.usatodaysubscribe.com/macy. Not valid in Alaska. Local sales tax when applicable will be added to your order.

---

Please tear off and return the slip with your payment. Be sure to write your account number on the front of your check and make your check payable to Macy's. You can pay at any Macy's store, on-line at www.macys.com/paybill, or by mail.
Payments received by 5:00pm local time will be credited as of the date received.

Account number: ███████████
Payment due date: Jun 30, 2007

★macy's  **Payment slip**

The creditor is Department Stores National Bank.

☐ New address or phone number?
Please provide the information on the reverse side.

| Account name − Type | New balance | Minimum payment | Amount enclosed |
|---|---|---|---|
| Revolving − 20 | 61.09 | $5.00 | $ |

15-02 6480

**HINDY H TAUB**
███████████
NEW YORK, NY 100██

028078

PO BOX 183083
COLUMBUS OH 43218-3083

0000041066359272D 0000500 0006109 0000000 1516

# WE APPRECIATE YOUR BUSINESS

1. **Avoiding Additional Finance Charge:** A. If your balance subject to finance charge is determined according to Methods A or B. below, you can avoid a Finance Charge appearing on your next statement if (a) we receive your payment of the "Total Amount Due" by the "Payment Due Date" shown on your current statement and (b) there is no purchase in the current billing period. If there is a purchase in the current billing period, a Finance Charge will appear on your next statement, and payment of that Finance Charge can be avoided if you pay the "Total Amount Due" by the "Payment Due Date" shown on that statement. B. If your balance subject to finance charge is determined according to Method 2, 5, or 6 below, you will avoid a Finance Charge appearing on your next statement if you pay the full New Balance by the "Payment Due Date".

2. **Balance Computation Methods:** We will figure the FINANCE CHARGE on your Account for each plan by applying the Periodic Rate to either the AVERAGE DAILY BALANCE or the DAILY BALANCE as described below.

**Method 2** The balance subject to Finance Charge is your "average daily balance". To get the "average daily balance", we take the beginning balance each day, which includes any unpaid Finance Charges from the previous billing period, subtract any payments, credits, late fees and returned check fees, and then we add any new purchases, unless the amount you owe at the beginning of the period is $0 or is paid during the billing period. This gives us your daily balance. We then add all the daily balances for the billing period and divide the total by the number of days in the billing period, which gives us your "average daily balance".

**Method 5** The balance subject to Finance Charge is your "average daily balance". To get the "average daily balance", we take the beginning balance each day and subtract any payments and credits and any prior Finance Charges not paid during the billing period. We do not add in any new purchases. This gives us your daily balance. We then add all the daily balances for the billing period and divide this by the number of days in the billing period, which gives us your "average daily balance".

**Method 6** The balance subject to Finance Charge is your "average daily balance". To get the "average daily balance", we take the beginning balance each day and subtract any payments, credits, late fees and returned check fees and any prior Finance Charges not paid during the billing period, and then we add any new purchases, unless the amount you owe at the beginning of the billing period is $0 or is paid during the billing period. This gives us your daily balance. We then add all the daily balances for the billing period and divide this total by the number of days in the billing period, which gives us your "average daily balance".

**Method A** The balance subject to Finance Charge is the total of your daily balances, including Finance Charges assessed on each previous day's balance, divided by the number of days in the billing period. In figuring the "daily balance", we first add the following to the previous day's balance: any purchases made (except new purchases are not added in ME or NC), unless, at our option, we post a purchase at a later date, any fees or other charges imposed on that day, and the Finance Charge applied at the daily periodic rate to the previous day's balance, and then subtract any payments and credits made on that day. We will not include in the daily balance any unpaid Finance Charges in NC or any late payment fees in WI. At the end of the billing period, we add up the Finance Charges determined each day to get the total Finance Charge for the billing period. You can determine this Finance Charge by applying the periodic rate shown to the balance subject to Finance Charge multiplied by the number of days in the billing period.

**Method B** The balance subject to Finance Charge is the total of your daily balances, including Finance Charges assessed on each previous day's balance, divided by the number of days in the billing period. In figuring the "daily balance", we first add the following to the previous day's balance: any purchases made, unless, at our option, we post a purchase at a later date, any fees or other charges imposed on that day, and the Finance Charge applied at the daily periodic rate to the previous day's balance, and then we subtract any payments and credits made on that day. At the end of the billing period, we add up the Finance Charges determined each day to get the total Finance Charge for the billing period. You can determine this Finance Charge by applying the periodic rate shown to the balance subject to Finance Charge multiplied by the number of days in the billing period.

3. **Minimum Finance Charge:** If permitted by law, a minimum FINANCE CHARGE of $1.00 may be imposed in each billing period in which the FINANCE CHARGE resulting from application of the periodic rate would be less than $1.00.

4. **Payments:** You may at any time pay your total indebtedness, or any part of it, but you must pay at least the "Minimum Payment" shown on the front of this Statement. If you make a payment at a location other than the address shown on the front of this Statement for receipt of payment, crediting that payment to your account may be delayed up to 5 days. Payments received by 5:00 p.m. local time at the address shown on the front of this Statement will be credited as of the date received. Payment of any disputed amount is not required pending our resolution of any billing inquiry. Sending an eligible check with this payment coupon authorizes us to complete the payment by electronic debit. If we do, **the checking account will be debited in the amount on the check, as soon as the day we receive the check, and the check will be destroyed.**
**Conditional Payments:** All communications concerning disputed amounts, including any check or other payment instrument in an amount less than the full amount due that you send to us marked "paid in full" or which you otherwise tender as full satisfaction of a disputed amount, must be sent to us at the address for billing inquiries shown below in section 11 regarding your right to dispute billing errors under federal law.

5. **Credit Balance:** Any credit balance on your account indicated by a "CR" or a "-" in the New Balance box is money we owe you. You can make charges against this amount or obtain a refund of the full amount by returning the top portion of your Statement, in the envelope provided, and indicating your request for a refund. Any amount over $1.00 that you have not charged against or for which you have not requested a refund will be refunded within 120 days after the end of the billing period in which the credit balance was created. If your credit balance is $1.00 or less, it will not be refunded unless requested, and after six months it will not be credited against future purchases.

6. **How Your Accounts Appear on a Credit Report:** We report each Account Type you request on your Account separately to the credit bureaus, which would cause you to have an entry on your credit report for each Account Type. These include charges you make at Macy's on a Revolving, Major Purchase or Club Account. If you also have a Visa Account, it reports separately to the credit bureaus.

7. **Credit Reports and Account Information:** If you believe that we have reported inaccurate information about you to a credit bureau, please write to us at P.O. Box 8217, Mason, Ohio 45040. In doing so, please identify the inaccurate information and tell us why you believe it is incorrect. If you have a copy of the credit report that includes the inaccurate information, please send a copy of that report to us as well.

8. **Adverse Credit Reports:** WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT.

9. **Past Due Accounts:** If your account is past due, we have included a message about that on the front of this statement. We are required by law to tell you that this is an attempt to collect a debt and any information obtained will be used for that purpose.

10. **Telephone Monitoring:** We treat every customer call confidentially. To ensure that you receive accurate and courteous customer service, on occasion, your call may be monitored by a second employee.

11. **Billing Rights Summary - In Case of Errors or Questions About Your Bill:** If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet at P.O. Box 8066, Mason, Ohio 45040 as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:
 • Your name and account number.
 • The dollar amount of the suspected error.
 • Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.
You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

**Special Rule for Credit Card Purchases:** If you have a problem with the quality of goods or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant or if we mailed you the advertisement for the property or services, all purchases are covered regardless of the amount or location of purchase.)

12. **Important Telephone Numbers:** For questions regarding this statement, to report a lost or stolen credit card or for Big Ticket/Delivery information, call the telephone number on the front of this statement. For TDD / TTY (Telecommunications Device for the Deaf) assistance call 1-800-281-0820.

PROP-MAC EW ENG 94003 (04/06)
MPLEM03 (04/06)

---

**New Information?** *(Please be sure to check the box on the front if you fill in any boxes below.)*
If your mailing address, telephone or e-mail address is changing, please enter the new information below.
If you need to change your name due to a change in marital status, please indicate the new name below.

♻ RECYCLABLE

Name Change: _____

Address Change: _____

City: _____ State: ___ Zip: _____

Telephone: _____

E-mail Address*: _____

*If you would like us to send you information via e-mail regarding offers we feel may be of interest to you.

# Exhibit B

## DEPARTMENT STORES NATIONAL BANK CREDIT CARD AGREEMENT AND PRIVACY POLICY
### Effective as of February, 2007

| Annual Percentage Rate | 22.9% or 24.9%* |
|---|---|
| Other APRs | Late Payment APR 24.9%† (see explanation below) |
| Minimum FINANCE CHARGE | $1.00 |
| Method of Computing the Balance | Average Daily Balance (including new purchases) |
| Grace Period for Repayment of the Balance | Not less than 25 days |

A Late Payment Fee of $15.00 for balances under $50.00; $25.00 for balances of $50.00 but less than $100.00; $29.00 for balances of $100.00 but less than $1,000.00; and $35.00 for balances $1,000.00 and above per Account Type.

You need not accept the credit card or pay any fee unless you use the card or have already used the Account.

To find out about changes in the information in the table above, write us at P.O. Box 8051, Mason, Ohio 45040.

*If you do not qualify for the 22.9% rate, the APR will be 24.9% as described in paragraph 6B. This rate will apply until you have had 12 billing cycles with no amount past due, at least four of which had a balance greater than zero, at which time the APR will be reduced to 22.9%. This rate will increase again to 24.9% if you subsequently fail to pay the Minimum Payment Due as described in paragraph 6C.

†If at any time you fail to pay the Minimum Payment Due by the Payment Due Date for two consecutive billing cycles or twice in any six month period, the APR will increase to 24.9%.

This Account Agreement contains the payment and credit terms for the Revolving Account, Major Purchase Account ("MPA") and Club Account. Please note that some of the terms differ depending on the account type. If, upon review of your application, we determine that you do not qualify for the rate of 22.9% APR, you agree that we may consider you for an account with a rate of 24.9% APR and if approved, you accept such rate. (These terms supersede any previous or existing advertised rate disclosures.)

In this Department Stores National Bank ("DSNB") Credit Card Agreement ("Agreement"), the words "you" and "your" mean any person who has requested and is issued a DSNB Credit Card ("credit card"), or is authorized to use the DSNB Credit Account ("Account"), that is established at your request, the terms of which appear in this Agreement. The words "we", "us", and "our" mean Department Stores National Bank, 701 E 60th St. N, Sioux Falls, SD 57117, and any person to whom this Agreement or the indebtedness created under this Agreement may be assigned.

**1. Use of Your Account and Card:** Your Account and Card may only be used to purchase goods and services for personal, family and household use.

**2. Promise to Pay:** In return for extending credit to you on this Account from time to time, you promise to pay us for purchases that you make on this Account from time to time at retailers authorized to accept our credit card. You also promise to pay us all other charges mentioned below, according to the terms of this Agreement.

**3. Types of Charges:** There are three types of charges ("Account Type") under your Account: Revolving charges, Major Purchase charges and Club charges. You may make a Revolving charge for any merchandise or service offered by retailers authorized to accept our credit card without any minimum purchase requirements. You may make a Major Purchase charge for qualifying purchases in certain designated categories. You may make a Club charge for selected merchandise, as permitted by us, subject to a minimum purchase requirement. Your desire to charge purchases to your Major Purchase or Club Account must be indicated at the time of purchase.

**4. No Finance Charge Feature (Club Account):** No Finance Charge will be assessed on your Club Account in any billing period during which your payment is at least equal to the Minimum Payment due as shown on the Statement. If you do not pay the amount due, the entire balance will be subject to a Finance Charge as outlined in paragraphs 6 and 7 below.

**5. Avoiding The Finance Charge/Payment Options:** When there is a balance due on your monthly billing statement ("Statement"), you agree to pay us, by the "Payment Due Date" shown on the Statement, at least the Minimum Payment shown on that Statement. The grace period for avoiding the Finance Charge shown on that Statement is explained below in section A of this paragraph.

A. **Grace Period For Avoiding Finance Charge on Current Statement:** A Finance Charge, calculated at the rate set forth in paragraph 6 and using the balance computation method set forth in paragraph 7, will appear on your Statement each month, including the first Statement you receive for new purchases. You can avoid paying the Finance Charge shown on your current Statement if there was no previous balance shown on that Statement and if we receive your payment of the "New Balance" by the "Payment Due Date" shown on that Statement.

B. **Grace Period For Avoiding Additional Finance Charge (On Next Statement):** You can avoid a Finance Charge on your next Statement if (a) we receive your payment of the "New Balance" by the "Payment Due Date" shown on your current Statement and (b) there is no purchase in the current billing period. If there is a purchase in the current billing period, a Finance Charge will appear on your next Statement and payment of that Finance Charge can be avoided if you pay the "New Balance" by the "Payment Due Date" shown on that Statement. If you elect to pay less than the "New Balance" on the current Statement, a Finance Charge will appear on your next Statement, calculated at the rate set forth in paragraph 6 and using the balance computation method set forth in paragraph 7.

**6. Finance Charge Rates/Minimum Finance Charge:** Finance Charges are determined as follows:

A. If a Finance Charge is imposed, we will apply an **ANNUAL PERCENTAGE RATE** of 22.9% (daily periodic rate of .06274%).

B. If you do not qualify for the rate shown above, we will apply an **ANNUAL PERCENTAGE RATE** of 24.9% (daily periodic rate of .06822%), if a Finance Charge is imposed. We will direct you on your new account shopping pass to this section of the Agreement if this rate applies to your new Account. This rate will apply until you have had 12 billing cycles with no amount past due, at least four of which had a balance greater than zero, at which time the **ANNUAL PERCENTAGE RATE** will be reduced to 22.9% (daily periodic rate of .06274%).

C. If you subsequently fail to make at least the Minimum Payment Due by the Payment Due Date shown on your Statement for two consecutive billing cycles, or if you miss a payment twice in any six month period, your **ANNUAL PERCENTAGE RATE** will increase to 24.9% (daily periodic rate of .06822%). This rate will apply until you have had 6 billing cycles with no amount past due, (of which at least two must have had a balance greater than zero), at which time the **ANNUAL PERCENTAGE RATE** will be reduced to 22.9% (daily periodic rate of .06274%), effective as of the first day of your next billing cycle.

The Annual Percentage Rate in effect and any subsequent changes will appear on your Statement. An increase in the rate means that you will pay a higher finance charge and perhaps a higher minimum payment.

D. A minimum **FINANCE CHARGE** of $1.00 is imposed in each billing period in which the **FINANCE CHARGE** resulting from application of the above stated daily periodic rate would be less than $1.00.

**7. Balance Subject to Finance Charge:** We figure the Finance Charge on your Account each day by multiplying your daily balance by the applicable daily periodic rate. At the end of the billing period, we add up the results of these daily calculations to get the total Finance Charge for the billing period. The daily balance is determined on each day by first adding the following to the previous day's balance: any purchases made on that day (unless, at our option, we post a purchase at a later date), fees charged that day, and the periodic Finance Charge applied to the previous day's balance, and then by subtracting any payments made and credits issued on that day.

**8. Minimum Payment:**

A. **Minimum Payment Due:** Each month, for each Account Type with a balance, you agree to pay at least the Minimum Payment Due, which is the sum of a Monthly Minimum plus all unpaid Late Payment Fees, any credit protection charges (if enrolled) applied that month and any delinquent Monthly Minimums by the Payment Due Date. The Monthly Minimum for each account type is calculated as follows:

1. Revolving Account Type: The greater of $5.00 or 3.25% of the New Balance, rounded up to the next whole dollar amount, or the entire New Balance if it is under $5.00.

2. Major Purchase Account Type: The greater of $5.00 or 3.25% of the highest New Balance since the account last had a $0 balance, rounded up to the next whole dollar amount, or the entire New Balance if it is under $5.00.

3. Club Account Type: The greater of $20.00 or 1/12th of the highest New Balance of your Club Account since it last had a $0 balance, rounded up to the next whole dollar amount, or the entire New Balance if it is under $20.00.

B. **Level Payments:** Since the Minimum Payment for the Major Purchase and Club Accounts is based on the highest New Balance in the Account Type until paid in full, the Minimum Payment for each Account Type will not decrease as the New Balance for each Account Type decreases, even if you pay more than the Minimum Payment required. Your Minimum Payment will increase, however, if a new purchase increases the New Balance in the Account Type above a previous high.

C. **Additional Payment Information:** You may at any time pay more than the Minimum Payment Due or the full amount due with no penalty. If you pay more than the Minimum Payment Due and there is still a balance due, you must continue to make Minimum Payments in future months. If we accept any late payment or partial payment, whether or not marked as payment in full, it will not affect the due date of any payment due under this Agreement, it will not act as an extension of time or a waiver of any amount then remaining unpaid, and it will not affect any of our rights under this Agreement including our right to declare the entire balance in your Account to be due. Returns and credits are not applied toward your Minimum Payment Due.

D. **Form of Payment:** You agree to make your payment by check, money order or similar instrument payable in U.S. funds and mail it to the address shown on your Periodic Statement.

**9. Special Payment Plans:** From time to time we may offer special promotional programs with respect to certain purchases on your Account. These plans may include, but are not limited to,

C. If you subsequently fail to make at least the Minimum Payment Due by the Payment Due Date shown on your Statement for two consecutive billing cycles, or if you miss a payment twice in any six month period, your **ANNUAL PERCENTAGE RATE** will increase to **24.9%** (daily periodic rate of .06822%). This rate will apply until you have had 6 billing cycles with no amount past due, (of which at least two must have had a balance greater than zero), at which time the **ANNUAL PERCENTAGE RATE** will be reduced to **22.9%** (daily periodic rate of .06274%), effective as of the first day of your next billing cycle.

The Annual Percentage Rate in effect and any subsequent changes will appear on your Statement. An increase in the rate means that you will pay a higher finance charge and perhaps a higher minimum payment.

D. A minimum **FINANCE CHARGE** of $1.00 is imposed in each billing period in which the **FINANCE CHARGE** resulting from application of the above stated daily periodic rate would be less than $1.00.

**7. Balance Subject to Finance Charge:** We figure the Finance Charge on your Account each day by multiplying your daily balance by the applicable daily periodic rate. At the end of the billing period, we add up the results of these daily calculations to get the total Finance Charge for the billing period. The daily balance is determined on each day by first adding the following to the previous day's balance: any purchases made on that day (unless, at our option, we post a purchase at a later date), fees charged that day, and the periodic Finance Charge applied to the previous day's balance, and then by subtracting any payments made and credits issued on that day.

**8. Minimum Payment:**
A. Minimum Payment Due: Each month, for each Account Type with a balance, you agree to pay at least the Minimum Payment Due, which is the sum of a Monthly Minimum plus all unpaid Late Payment Fees, any credit protection charges (if enrolled) applied that month and any delinquent Monthly Minimums by the Payment Due Date. The Monthly Minimum for each account type is calculated as follows:
1. Revolving Account Type: The greater of $5.00 or 3.25% of the New Balance, rounded up to the next whole dollar amount, or the entire New Balance if it is under $5.00.
2. Major Purchase Account Type: The greater of $5.00 or 3.25% of the highest New Balance since the account last had a $0 balance, rounded up to the next whole dollar amount, or the entire New Balance if it is under $5.00.
3. Club Account Type: The greater of $20.00 or 1/12th of the highest New Balance of your Club Account since it last had a $0 balance, rounded up to the next whole dollar amount, or the entire New Balance if it is under $20.00.
B. Level Payments: Since the Minimum Payment for the Major Purchase and Club Accounts is based on the highest New Balance in the Account Type until paid in full, the Minimum Payment for each Account Type will not decrease as the New Balance for each Account Type decreases, even if you pay more than the Minimum Payment required. Your Minimum Payment will increase, however, if a new purchase increases the New Balance in the Account Type above a previous high.
C. Additional Payment Information: You may at any time pay more than the Minimum Payment Due or the full amount due with no penalty. If you pay more than the Minimum Payment Due and there is still a balance due, you must continue to make Minimum Payments in future months. If we accept any late payment or partial payment, whether or not marked as payment in full, it will not affect the due date of any payment due under this Agreement, it will not act as an extension of time or a waiver of any amount then remaining unpaid, and it will not affect any of our rights under this Agreement including our right to declare the entire balance in your Account to be due. Returns and credits are not applied toward your Minimum Payment Due.
D. Form of Payment: You agree to make your payment by check, money order or similar instrument payable in U.S. funds and mail it to the address shown on your Periodic Statement.
**9. Special Payment Plans:** From time to time we may offer special promotional programs with respect to certain purchases on your Account. These plans may include, but are not limited to, deferred payment, skip payment and finance charge waiver plans. These plans may be discontinued at any time.
**10. Returned Check Fee:** We add a $29.00 fee to your Account if any payment check or similar instrument is not honored or is returned because it cannot be processed, or if an automatic debit is returned unpaid. We assess this fee the first time a check or payment is not honored, even if it is honored upon resubmission.
**11. Late Payment Fee:** A late payment fee of $15.00 for balances under $50.00; $25.00 for balances of $50.00 but less than $100.00; $29.00 for balances of $100.00 but less than $1,000.00; and $35.00 for balances $1,000.00 and above per Account Type will be charged to your Account if we do not receive your minimum monthly payment by your Payment Due Date.
**12. Pay-by-Phone Fee:** We may allow you to make payments by authorizing us over the telephone to transfer funds from a deposit account to your Account. We will charge a Pay-by-Phone Fee for each such transfer, if permitted by applicable law. The amount of the Fee will be disclosed at the time you request this optional payment service.
**13. Document Production Fee:** We may charge you a fee of $3.00 per item if you request copies of previously provided records, such as billing statements and sales checks. We will not charge you for documents produced in connection with a Billing Error investigation.
**14. Fees:** For all fees, we reserve the right to waive all or part of any fee in certain cases without losing our right to impose such fee in future billing periods.
**15. Application of Payments:** You authorize us within each Account Type to apply your payments and credits in a way that is most favorable or convenient for us. This may include applying such payments and credits to low APR balances before higher APR balances.
**16. Default/Collection Costs:** If we fail to receive any minimum payment when due, if you declare bankruptcy, or if you die, it will be a default, and, subject to any right you may have under state law to receive notice of and to cure such default, we may declare the entire unpaid balance in the Account due and payable. If your Account is referred to an attorney who is not our salaried employee and we prevail in a suit against you to collect the amount you owe, in addition to the full amount owed and any court costs, you agree to pay our reasonable attorney's fees, to the extent permitted by applicable law. If your Account is referred to a collection agency, we may charge you a collection fee, if permitted by applicable law. No attorney's fees or collection costs will be imposed in any state, or in any amount, unless permitted by law. To the extent permitted by applicable law, after we declare the entire unpaid balance due, we may impose interest on the outstanding balance due each month until we obtain a court judgment for the amount you owe.
**17. Increasing or Limiting Your Credit:** We may increase or decrease your line of credit from time to time. We have the right at any time to limit or terminate the use of your Account without giving you notice in advance, unless we are required to give you notice by applicable law. If requested, you agree to return any credit card issued to you. You agree to notify us promptly if any credit card we issue to you is lost or stolen.
**18. Change in Terms/Change in Address:** We may change any term of this Agreement or add a new term at any time, including changes to the minimum payment schedule(s) or the Finance Charge rates, and may apply the new terms to any unpaid balances, as well as to any future balances, unless prohibited by applicable law. When required by applicable law, we will mail you prior notice of the change(s). You agree to notify us promptly in writing if you move. Until we receive written notice of your new address, we will continue to send Statements and other notices to the address in our records.
**19. Credit Investigation:** You give us permission to investigate your credit history by obtaining consumer reports and by making direct inquiries of businesses where you have accounts and where

you work. We may request a consumer report from consumer reporting agencies in considering your application for this Account and later in connection with an update, renewal, extension of credit, or in connection with the collection of this Account. Upon your request we will tell you whether or not a consumer report was requested and the name and address of any consumer reporting agency that furnished the report.

20. **Disputed Accuracy of Credit Report:** We may report information about your Account to credit reporting agencies. Late payments, missed payments, or other defaults on your Account may appear on your credit report. If you request cards on your Account for others, we may report account information in the names of those other people as well. If you think we reported erroneous information to a credit reporting agency, write to: Credit Bureau Dispute Verification, P.O. Box 8218, Mason, OH 45040-8218. In doing so, please identify the inaccurate information and tell us why you believe it is incorrect. If you have a copy of the credit report that includes the inaccurate information, please send a copy of that report to us as well. We will promptly investigate the matter and notify you in writing of the results. If we agree with you, we will contact each credit reporting agency to which we reported and request a correction.

21. **Governing Law:** You understand and agree that this Agreement is entered into between you and us in South Dakota, it is not valid until we accept it in South Dakota, and any credit we extend to you is extended from South Dakota. You further understand and agree that this Agreement is governed only by applicable federal law and the law of the State of South Dakota, whether or not you live in South Dakota and whether or not you use your credit card in South Dakota.

22. **Identifying Information:** The identifying information you provided in your credit application (including name, address, telephone number, email address and social security number) as well as any updates to that information is provided to DSNB, Federated Department Stores and their affiliates.

23. **Assignment:** We may assign your Account and any of our rights under this Agreement to our affiliates or some other financial institution or company without prior notice to you. Following such assignment, that entity will take our place in this Agreement.

24. **Disputed Amounts:** All communications concerning disputed amounts, including any check or other payment instrument in an amount less than the full amount due that you send to us marked "paid in full", or which you otherwise tender as full satisfaction of a disputed amount, must be sent to us at the address for billing inquiries shown below in the section regarding your right to dispute billing errors under federal law.

25. **Telephone Monitoring:** We treat every customer call confidentially. To ensure that you receive accurate and courteous customer service, on occasion, your call may be monitored by a second employee.

**NOTICES TO APPLICANT:**
The applicant, if married, may apply for a separate account. After credit approval, each applicant shall have the right to use this Account to the extent of any credit limit set by the creditor and each applicant may be liable for all amounts of credit extended under this Account to any joint applicant.

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT –**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

YOUR BILLING RIGHTS: KEEP THIS NOTICE FOR FUTURE USE.

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill.** If you think your bill is wrong, or if you need more information about a transaction on your bill, write us (on a separate sheet) at P.O. Box 8066, Mason, OH 45040. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.
In your letter, give us the following information:
- Your name, the name of the department store and your account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.** We must acknowledge your letter within 30 days unless we have corrected the error by then. Within 90 days we must either correct the error or explain why we believe the bill was correct.
After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.
If we find that we made a mistake on your bill you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.
If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.
If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases.** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:
(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
(b) The purchase price must have been more than $50.
These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases.** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

## DEPARTMENT STORES NATIONAL BANK PRIVACY POLICY

Our Privacy Notice for Your Credit Card Account

Keeping customer information secure is a top priority for all of us at Department Stores National Bank ("DSNB"), the bank that issues your credit account. This notice tells you how we collect, handle and disclose personal information about you. If you want to limit our disclosing this information, please see Your Privacy Choices and a toll-free number to contact us in paragraph E of this notice. If you are a joint accountholder, we will accept your privacy choices from either of you and apply it to the entire account. This notice also applies to applicants and former customers as well as current customers unless we state otherwise. This notice replaces all previous notices to you about information-sharing practices on your Account. We may amend this notice at any time, and will inform you of changes as required by law.*

**A. Security of Personal Information**
We protect personal information by maintaining physical, electronic, and procedural safeguards that meet or exceed applicable law. We train our employees in the proper handling of personal information. When we use other companies to provide services for us, we require them to protect the confidentiality of personal information they receive.

**B. Personal Information We Collect and May Disclose**
The personal information we collect about you comes from the following sources:
- Information we receive from you on applications or other forms, such as your name, address, telephone number, date of birth, social security number, and driver's license number,
- Information about your transactions with us, our affiliates or nonaffiliated third parties, such as your account balances, payment history, and account activity,
- Information we receive from a consumer reporting agency, such as your credit bureau reports and other information relating to your creditworthiness, and
- Information we receive about you from other sources, such as your employer, demographic firms, and other third parties.

We may disclose any of the above information that we collect to affiliates and non-affiliated third parties as described below.

**C. Affiliates To Whom We May Disclose Personal Information**
Our affiliates are the family of companies controlled by Citigroup and the family of companies controlled by Federated Department Stores("FDS"). Affiliates to whom we may disclose personal information about you are in several different businesses, including banking, credit cards, consumer finance, insurance, securities and retail sales of goods and services. Our affiliates include those doing business under the names CitiFinancial, CitiMortgage, Smith Barney, Primerica, Macy's and Bloomingdale's.

**D. Nonaffiliated Third Parties To Whom We May Disclose Personal Information**
Nonaffiliated third parties are those not part of the family of companies controlled by Citigroup and/or FDS. We may disclose personal information about you to the following types of nonaffiliated third parties:
- Financial services providers, such as companies engaged in banking, credit cards, consumer finance, securities and insurance.
- Non-financial companies, such as companies engaged in direct marketing and the selling of consumer products and services.
- Others, such as non-profit organizations.

If you opt out of information sharing with nonaffiliated companies (Opt-out 1), we will not make these disclosures except as follows. First, we may disclose information about you as described above in "Personal Information We Collect and May Disclose" to third parties that perform marketing or other services on our behalf or to other financial institutions with whom we have joint marketing agreements. Second, we may disclose personal information about you to third parties as permitted by law, such as disclosures necessary to process and service your DSNB credit card account.

**E. Your Privacy Choices**
This section describes your privacy choices. **Please remember that we will continue to protect your personal information regardless of your privacy choices. If you have previously informed us, or the prior issuer of your credit card, of your privacy choices, you do not need to do so again.**

If you wish to exercise Opt-out 1 and/or Opt-out 2 as described below, please write to us at P.O. Box 8067, Mason, OH 45040 and include your name, address, telephone number and account number or call toll-free:

Bloomingdale's ................................................. 1-888-922-7026
Macy's ............................................................. 1-800-830-3087
Visa® Customers .............................................. 1-800-668-7196

**Disclosing to Nonaffiliated Third Parties (Opt-out 1)** – As described in this notice, we will limit the personal information about you that we disclose to nonaffiliated third parties if you exercise Opt-out 1.

**Sharing with Citigroup and FDS Affiliates (Opt-out 2)** – We may share with our affiliates all of the information we collect from you. However, if you exercise Opt-out 2, we will not share with our affiliates information we receive from you or third parties used as a factor in determining your creditworthiness (e.g., a credit report), except as permitted by law.

**Information for Vermont and California Customers**
In response to a Vermont regulation, we will automatically treat accounts with Vermont billing addresses as if you exercised Opt-out 1 and Opt-out 2 without requiring you to call or write to us. And if we disclose information about you to nonaffiliated third parties with whom we have joint marketing agreements, we will only disclose your name, address, other contact or identification information, and information about our transactions or experiences with you.

In response to a California law, we will automatically treat accounts with California mailing addresses as if you exercised Opt-out 1 and will not disclose personal information about you to nonaffiliated third parties except as permitted by the applicable California law. We will also limit the sharing of information about you with our affiliates to comply with all California privacy laws that apply to us. To further restrict sharing with affiliates as described in this notice, you will need to exercise Opt-out 2 by calling or writing to us as described in paragraph E.

**Please allow approximately 30 days from our receipt of your privacy choices for them to become effective.** If you have more than one credit card issued by DSNB, and would like your privacy choices to be applied to those accounts, you must exercise your privacy choices separately for each account. If you are also a customer of other Citigroup affiliates and you receive a notice of their intent to share information about you, you will need to separately notify them if you do not want them to share such information.

### Important Information about Credit Reporting
We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

*However, we will not change your privacy elections unless we give you a revised notice.

DSNB170TC0207